TOWN OF MOREAU et al., Plaintiffs, v ORKIN EXTERMINATING COMPANY, INC., Defendant, and ABALENE PEST CONTROL SERVICE, INC., et al., Defendants and Third-Party Plaintiffs-Appellants. CAPITAL MUTUAL INSURANCE COMPANY et al., Third-Party Defendants-Respondents, et al., Third-Party Defendant.

Third Department, April 4, 1991

416

## APPEARANCES OF COUNSEL

*Whiteman, Osterman & Hanna (Jean F. Gerbini* and *Philip H. Gitlen* of counsel), for third-party plaintiffs-appellants.

*Hancock & Estabrook (Alan J. Pierce* of counsel), for Capital Mutual Insurance Company, third-party defendant-respondent.

*Sheft & Sheft (David Holmes* and *Peter I. Sheft* of counsel), for National Union Fire Insurance Company of Pittsburgh, Pennsylvania, third-party defendant-respondent.

## OPINION OF THE COURT

Mercure, J.

In October 1985, employees of defendant Abalene Pest Control Service, Inc. (hereinafter Abalene) buried a large quantity of hazardous chemicals on the grounds of Abalene's facility in the Town of Moreau, Saratoga County.[1] The buried chemicals were discovered by the State Department of Environmental Conservation and its contractor, third-party defendant New England Marine Contractors, Inc. (hereinafter

---

1. At the time of the dumping, Abalene was leasing the land where the facility was operating from defendants Walter T. Blank and Jane F. Blank. The Blanks were also president, vice-president and sole shareholders of Abalene.

NEMC), on or about March 31, 1987. Abalene was thereafter indicted in Saratoga County, charged with knowingly burying hazardous chemicals in unsafe containers and, following a trial in January 1989, convicted of four counts of unlawful disposal of hazardous wastes under ECL 71-2713 and two counts of unlawful disposal of hazardous wastes under ECL 71-2711.

In January 1988, plaintiffs commenced this action seeking abatement of the public nuisance and damages. After issue was joined, Abalene, Walter T. Blank and Jane F. Blank (hereinafter collectively referred to as defendants) commenced a third-party action against NEMC, Capital Mutual Insurance Company (hereinafter Capital) and National Union Fire Insurance Company of Pittsburgh, Pennsylvania (hereinafter National). National insures defendants in their corporate capacity while Capital insures the Blanks only in their individual capacity. Essentially, defendants allege that the environmental damage was caused when NEMC carelessly removed the improperly buried chemicals and that Capital and National had a duty to defend and indemnify them because of comprehensive general liability insurance policies. Thereafter, Capital and National each moved for summary judgment dismissing the third-party complaint. Defendants cross-moved for an order declaring that Capital and National were obligated to defend, claiming that Supreme Court could only examine the allegations of the complaint in so deciding. This argument notwithstanding, the court took judicial notice of the criminal convictions, found that Abalene's dumping was intentional and therefore outside of the policy coverage, and dismissed the third-party complaint. Defendants now appeal.

There should be an affirmance. We agree with Supreme Court that Capital and National had no duty to defend or indemnify defendants. Capital's policy defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured".[2] On appeal, defendants claim that the complaint alleges property damage arising from an "occurrence" as defined in the policies and that the court can only look to the four corners of the complaint in determining if there is a duty to defend.

---

2. The definition of an occurrence in National's policy is essentially the same.

It is familiar law that the duty to provide a defense in an action against an insured is broader than the duty to indemnify and attaches even when indemnity is unclear *(see, International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 326-327). Thus, it "is not whether the injured party can maintain a cause of action against the insured, but whether he can state facts which bring the injury within the coverage" *(supra,* at 327). When the allegations of the complaint allow for no interpretation that will bring them within the coverage afforded by the policy, there is no duty to defend as a matter of law *(see, Lionel Freedman, Inc. v Glens Falls Ins. Co.,* 27 NY2d 364, 368). Nor does the duty attach where, as a matter of law, there is no basis on which the insurer may be held liable for indemnification *(see, Spoor-Lasher Co. v Aetna Cas. & Sur. Co.,* 39 NY2d 875, 876). The burden of establishing that a claim falls within a policy's exclusionary provisions rests with the insurer *(see, Neuwirth v Blue Cross & Blue Shield,* 62 NY2d 718, 719).

Here, the allegation of the complaint that defendants "knew or should have known that the manner in which the wastes were disposed of would result in their release into the environment" is virtually identical to the allegation which this court considered in *County of Broome v Aetna Cas. & Sur. Co.* (146 AD2d 337, 340, *lv denied* 74 NY2d 614) and concluded that "it cannot be said that [the complaint] alleges that the consequences of [the] pollution were not intended or expected" *(supra,* at 340). Moreover, while it is true that a court should be hesitant to leave the boundaries of the complaint in making its determination on an insured's duty to defend *(see, International Paper Co. v Continental Cas. Co., supra),* it need not ignore positive proof, extrinsic to the complaint, that assists in clarifying an ambiguous allegation *(see, Technicon Elecs. Corp. v American Home Assur. Co.,* 74 NY2d 66, 75; *Lionel Freedman, Inc. v Glens Falls Ins. Co., supra,* at 368-369; *County of Broome v Aetna Cas. & Sur. Co., supra,* at 341-342). Accordingly, applying the principle of collateral estoppel, Supreme Court properly considered Abalene's criminal convictions for knowingly dumping hazardous wastes *(see, supra)* and determined that the convictions precluded defendants from contending that the burial of pesticides was unintentional *(see, Green v Santa Fe Indus.,* 70 NY2d 244, 253; *Shire Realty Corp. v Schorr,* 55 AD2d 356, 361; Restatement [Second] of Judgments § 59 [3], [5]; *cf., Matter of Delford Indus. v New York*

*State Dept. of Envtl. Conservation,* — AD2d —, — [Mar. 14, 1991]). Based upon the foregoing, it is our view that there was no "occurrence" within the meaning of the policies.

Moreover, were we to accept the argument that there are questions of fact as to whether there was an "occurrence", we would still find no duty to defend or indemnify in view of the pollution exclusion clauses within the policies. Under Capital's policy, no insurance is provided for: "bodily injury or property damage arising out of the discharge, dispersal, release or escape of * * * toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land * * * but this exclusion does not apply if such discharge, dispersal, release or escape is *sudden and accidental"* (emphasis supplied).[3] Here, the complaint alleges the burial and discharge of hazardous chemicals and the washing and rinsing of pesticide trucks over a 10-year period. In these circumstances, the toxic material having been knowingly and intentionally, and not unexpectedly and unintentionally, discharged into the environment over a long period of time, it cannot be said that the discharge was sudden and accidental *(see, Powers Chemco v Federal Ins. Co.,* 74 NY2d 910, 911; *Technicon Elecs. Corp. v American Home Assur. Co., supra,* at 75; *County of Broome v Aetna Cas. & Sur. Co., supra,* at 341-342; *cf., Colonie Motors v Hartford Acc. & Indem. Co.,* 145 AD2d 180, 182).

As a final matter, we reject the contention that the determination in a related Federal action that Capital and National had a duty to defend estops them from raising the issue here. The complaints in the State and Federal actions are not the same and, accordingly, there is no identity of issues *(see, Ryan v New York Tel. Co.,* 62 NY2d 494, 500; *Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11, 17).

We have considered defendants' remaining contentions and find that they are either unpreserved for appellate review or without merit.

CASEY, J. P., WEISS, CREW III and HARVEY, JJ., concur.

Orders affirmed, with one bill of costs.

---

**3.** The language of the pollution exclusion clause in National's policy is essentially the same, but also excludes intentional discharges, "if for the purpose of pest control * * * in conformity with any statute, ordinance or regulation applicable thereto".